TM:JD/AHT
F.#2011R02050

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -

ANTHONY ROMANELLO,
   also known as "Rom," and
NICHOLAS SANTORA,
   also known as "Nicky
   Mouth" and "Nicky Cigars,"

        Defendants.

- - - - - - - - - - - - - - - X

FILED
CLERK

2012 MAY 16  PM 4: 45

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. <u>12-050 (S-6)(CBA)</u>
(T. 18, U.S.C., §§
894(a)(1), 981(a)(1)(c),
1951(a), 1955(a), 1955(d),
1962(d), 1963, 1963(a),
1963(m), 2 and 3551 <u>et
seq</u>.; T. 21, U.S.C., §§
841(b)(1)(D), 846, 853(a)
and 853(p); T. 28, U.S.C.,
§ 2461(c))

THE GRAND JURY CHARGES:

<u>INTRODUCTION TO ALL COUNTS</u>

     At all times relevant to this Superseding Indictment,
unless otherwise indicated:

<u>The Enterprise</u>

     1.  The members and associates of the Bonanno organized
crime family of La Cosa Nostra constituted an "enterprise," as
defined in Title 18, United States Code, Section 1961(4), that
is, a group of individuals associated in fact (hereinafter the
"Bonanno crime family" and the "enterprise").  The enterprise
constituted an ongoing organization whose members functioned as a
continuing unit for a common purpose of achieving the objectives
of the enterprise.  The Bonanno crime family engaged in, and its

activities affected, interstate and foreign commerce.  The
Bonanno crime family was an organized criminal group that
operated in the Eastern District of New York and elsewhere.

2.   La Cosa Nostra operated through organized crime
families.  Five of these crime families - the Bonanno, Colombo,
Gambino, Genovese and Luchese crime families - were headquartered
in New York City, and supervised criminal activity in New York,
in other areas of the United States and, in some instances, in
other countries.  Another crime family, the Decalvacante crime
family, operated principally in New Jersey, but from time to time
also in New York City.

3.   The ruling body of La Cosa Nostra, known as the
"Commission," consisted of leaders from each of the crime
families.  The Commission convened from time to time to decide
certain issues affecting all of the crime families, such as rules
governing crime family membership.

4.   The Bonanno crime family had a hierarchy and
structure.  The head of the Bonanno crime family was known as the
"boss."  The Bonanno crime family boss was assisted by an
"underboss" and a counselor known as a "consigliere."  Together,
the boss, underboss and consigliere were the crime family's
"administration."  With the assistance of the underboss and
consigliere, the boss was responsible for, among other things,
setting policy and resolving disputes within and between La Cosa

2

Nostra crime families and other criminal groups.  The administration further supervised, supported, protected and disciplined the lower-ranking participants in the crime family. In return for their supervision and protection, the administration received part of the illegal earnings generated by the crime family.  Members of the Bonanno crime family served in an "acting" rather than "official" capacity in the administration on occasion due to another administration member's incarceration or ill health, or for the purpose of seeking to insulate another administration member from law enforcement scrutiny.  Further, on occasion, the Bonanno crime family was overseen by a "panel" of crime family members that did not include the boss, underboss and/or consigliere.

5.  Below the administration of the Bonanno crime family were numerous "crews," also known as "regimes" and "decinas."  Each crew was headed by a "captain," also known as a "skipper," "caporegime" and "capodecina."  Each captain's crew consisted of "soldiers" and "associates."  The captain was responsible for supervising the criminal activities of his crew and providing the crew with support and protection.  In return, the captain often received a share of the crew's earnings.

6.  Only members of the Bonanno crime family could serve as a boss, underboss, consigliere, captain or soldier. Members of the crime family were referred to on occasion as

3

"goodfellas" or "wiseguys," or as persons who had been "straightened out" or who had their "button."  Associates were individuals who were not members of the crime family, but who nonetheless engaged in criminal activity for, and under the protection of, the crime family.

      7.  Many requirements existed before an associate could become a member of the Bonanno crime family.  The Commission of La Cosa Nostra from time to time limited the number of new members that could be added to a crime family.  An associate was also required to be proposed for membership by an existing crime family member.  When the crime family's administration considered the associate worthy of membership, the administration then circulated the proposed associate's name on a list given to other La Cosa Nostra crime families, which the other crime families reviewed and either approved or disapproved.  Unless there was an objection to the associate's membership, the crime family then "inducted," or "straightened out," the associate as a member of the crime family in a secret ceremony.  During the ceremony, the associate, among other things: swore allegiance for life to the crime family above all else, even the associate's own family; swore, on penalty of death, never to reveal the crime family's existence, criminal activities and other secrets; and swore to follow all orders issued by the crime family boss, including swearing to commit murder if the boss directed it.

## Methods and Means of the Enterprise

8.   The principal purpose of the Bonanno crime family was to generate money for its members and associates.   This purpose was implemented by members and associates of the Bonanno crime family through various criminal activities, including drug trafficking, robbery, extortion, fraud, bribery, illegal gambling and loansharking.   The members and associates of the Bonanno crime family also furthered the enterprise's criminal activities by threatening economic injury and using and threatening to use physical violence, including murder.

9.   Although the primary purpose of the Bonanno crime family was to generate money for its members and associates, the members and associates at times used the resources of the family to settle personal grievances and vendettas, sometimes with the approval of higher-ranking members of the family.   For those purposes, members and associates of the enterprise were asked and expected to carry out, among other crimes, acts of violence, including murder and assault.

10.   The members and associates of the Bonanno crime family engaged in conduct designed to prevent government detection of their identities, their illegal activities and the location of proceeds of those activities.   That conduct included a commitment to murdering persons, particularly members or associates of organized crime families, who were perceived as

5

potential witnesses against members and associates of the enterprise.

11.   Members and associates of the Bonanno crime family often coordinated criminal activity with members and associates of other organized crime families.

### The Defendants

12.   The defendant NICHOLAS SANTORA, also known as "Nicky Mouth" and "Nicky Cigars," participated in the operation and management of the enterprise.

13.   At various times, the defendant ANTHONY ROMANELLO, also known as "Rom," was a captain, acting captain, soldier and associate within the Genovese crime family.

14.   At various times, the defendant NICHOLAS SANTORA, also known as "Nicky Mouth" and "Nicky Cigars," was a member of the administration, a captain, acting captain, soldier and associate within the Bonanno crime family.

### COUNT ONE
(Racketeering Conspiracy)

15.   The allegations contained in paragraphs 1 through 14 are realleged and incorporated as if fully set forth in this paragraph.

16.   On or about and between June 1, 2005 and November 21, 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant NICHOLAS SANTORA, also known as "Nicky Mouth" and "Nicky Cigars,"

6

together with others, being a person employed by and associated with the Bonanno crime family, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conspire to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of the racketeering acts set forth below.  The defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

<u>RACKETEERING ACT ONE</u>
(Extortionate Collection of Credit Conspiracy/
Extortionate Collection of Credit/Extortion Conspiracy/
Extortion - John Doe #1 and John Doe #2)

17.  The defendant NICHOLAS SANTORA agreed to the commission of the following acts, any one of which alone constitutes Racketeering Act One:

A.  <u>Extortionate Collection of Credit Conspiracy</u>

18.  On or about and between November 1, 2006 and May 30, 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant NICHOLAS SANTORA, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect one or more extensions of

7

credit from John Doe #1 and John Doe #2, individuals whose identities are known to the Grand Jury, in violation of Title 18, United States Code, Section 894(a)(1).

     B.    <u>Extortionate Collection of Credit</u>

     19.  On or about and between November 1, 2006 and May 30, 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant NICHOLAS SANTORA, together with others, did knowingly and intentionally participate in the use of extortionate means to attempt to collect one or more extensions of credit from John Doe #1 and John Doe #2, in violation of Title 18, United States Code, Sections 894(a)(1) and 2.

     C.    <u>State Law Extortion Conspiracy</u>

     20.  On or about and between November 1, 2006 and May 30, 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant NICHOLAS SANTORA, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendant and others agreed to obtain property, to wit: money, by compelling and inducing John Doe #1 and John Doe #2 to deliver such property by instilling in him a fear that, if the property were not so delivered, one or more persons would (1) cause physical injury to one or more persons in the future and (2) cause damage to property, in violation of New York Penal

Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

D.   State Law Extortion

21.   On or about and between November 1, 2006 and May 30, 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant NICHOLAS SANTORA, together with others, did knowingly and intentionally steal property by extortion, in that the defendant and others obtained property, to wit: money, by compelling and inducing John Doe #1 and John Doe #2 to deliver such property by instilling in him a fear that, if the property were not so delivered, one or more persons would (1) cause physical injury to one or more persons in the future and (2) cause damage to property, in violation of New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 20.00.

RACKETEERING ACT TWO
(Illegal Gambling)

22.   On or about and between January 1, 2007 and November 21, 2011, both dates being approximate and inclusive, within the Eastern District of New York, the defendant NICHOLAS SANTORA, together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving illegal card games located in Nassau County, New York, which operated in violation of the laws of the State of New York,

9

to wit: New York Penal Law Sections 225.05 and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any single day, in violation of Title 18, United States Code, Sections 1955(a) and 2.

RACKETEERING ACT THREE
(Extortion Conspiracy)

23.   The defendant NICHOLAS SANTORA agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act Three:

A.   Federal Extortion Conspiracy

24.   On or about and between January 1, 2007 and November 21, 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant NICHOLAS SANTORA, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others agreed to obtain property, to wit: money, from John Doe #3, a manager and owner of an illegal gambling operation whose identity is known to the Grand Jury, with his consent, which consent was to be induced through wrongful use of actual and threatened force,

10

violence and fear, in violation of Title 18, United States Code, Section 1951(a).

B.    **State Extortion Conspiracy**

25.   On or about and between January 1, 2007 and November 21, 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant NICHOLAS SANTORA, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendant and others agreed to obtain property, to wit: money, by compelling and inducing John Doe #3 to deliver such property by instilling in him a fear that, if the property were not so delivered, one or more persons would (1) cause physical injury to one or more persons in the future and (2) cause damage to property, in violation of New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

### RACKETEERING ACT FOUR
(Illegal Gambling)

26.   On or about and between September 1, 2010 and January 20, 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant NICHOLAS SANTORA, together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving bookmaking, which operated in violation of the laws of New York State, to wit: New York Penal

Law Sections 225.05 and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of 30 days and had a gross revenue of at least $2,000 in any single day, in violation of Title 18, United States Code, Sections 1955(a) and 2.

RACKETEERING ACT FIVE
(Extortion Conspiracy/Attempted Extortion/Marijuana Distribution
Conspiracy - John Doe #4)

27.  The defendant NICHOLAS SANTORA agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act Five:

A.  <u>State Law Extortion Conspiracy</u>

28.  On or about and between September 1, 2011 and November 21, 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant NICHOLAS SANTORA, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendant and others agreed to obtain property, to wit: money, by compelling and inducing John Doe #4, an individual whose identity is known to the Grand Jury, to deliver such property by instilling in him a fear that, if the property were not so delivered, one or more persons would (1) cause physical injury to one or more persons in the future and (2) cause damage

12

to property, in violation of New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

    B.   <u>State Law Attempted Extortion</u>

      29.  On or about and between September 1, 2011 and November 21, 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant NICHOLAS SANTORA, together with others, did knowingly and intentionally attempt to steal property by extortion, in that the defendant and others attempted to obtain property, to wit: money, by compelling and inducing John Doe #4 to deliver such property by instilling in him a fear that, if the property were not so delivered, one or more persons would (1) cause physical injury to one or more persons in the future and (2) cause damage to property, in violation of New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii), 110.00 and 20.00.

    C.   <u>Marijuana Distribution Conspiracy</u>

      30.  On or about and between November 1, 2009 and November 21, 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant NICHOLAS SANTORA, together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute a controlled substance, which offense involved a substance containing marijuana, a Schedule I controlled

substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

(Title 18, United States Code, Sections 1962(d), 1963 and 3551 et seq.)

<u>COUNT TWO</u>
(Extortionate Collection of Credit Conspiracy -
John Doe #1 and John Doe #2)

31.   The allegations contained in paragraphs 1 through 14 are realleged and incorporated as if fully set forth in this paragraph.

32.   On or about and between November 1, 2006 and May 30, 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY ROMANELLO, also known as "Rom," and NICHOLAS SANTORA, also known as "Nicky Mouth" and "Nicky Cigars," together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect one or more extensions of credit from John Doe #1 and John Doe #2.

(Title 18, United States Code, Sections 894(a)(1) and 3551 et seq.)

14

## COUNT THREE
### (Extortionate Collection of Credit - John Doe #1 and John Doe #2)

33.   The allegations contained in paragraphs 1 through 14 are realleged and incorporated as if fully set forth in this paragraph.

34.   On or about and between November 1, 2006 and May 30, 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ANTHONY ROMANELLO, also known as "Rom," and NICHOLAS SANTORA, also known as "Nicky Mouth" and "Nicky Cigars," together with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect one or more extensions of credit from John Doe #1 and John Doe #2.

(Title 18, United States Code, Sections 894(a)(1), 2 and 3551 et seq.)

## COUNT FOUR
### (Illegal Gambling)

35.   The allegations contained in paragraphs 1 through 14 are realleged and incorporated as if fully set forth in this paragraph.

36.   On or about and between January 1, 2007 and November 21, 2011, both dates being approximate and inclusive, the defendant NICHOLAS SANTORA, also known as "Nicky Mouth" and "Nicky Cigars," together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own

15

all or part of an illegal gambling business, to wit: a gambling business involving illegal card games located in Nassau County, New York, which operated in violation of the laws of the State of New York, to wit: New York Penal Law Sections 225.05 and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of at least $2,000 in any single day.

(Title 18, United States Code, Sections 1955(a), 2 and 3551 et seq.)

## COUNT FIVE
### (Extortion Conspiracy)

37.  The allegations contained in paragraphs 1 through 14 are realleged and incorporated as if fully set forth in this paragraph.

38.  On or about and between January 1, 2007 and November 21, 2011, both dates being approximate and inclusive, the defendant NICHOLAS SANTORA, also known as "Nicky Mouth" and "Nicky Cigars," together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others agreed to obtain property, to wit: money, from John Doe #3, with his consent,

16

which consent was to be induced through wrongful use of actual
and threatened force, violence and fear.

     (Title 18, United States Code, Sections 1951(a) and
3551 et seq.)

COUNT SIX
(Marijuana Distribution Conspiracy)

     39.  The allegations contained in paragraphs 1 through
14 are realleged and incorporated as if fully set forth in this
paragraph.

     40.  On or about and between November 1, 2009 and
November 21, 2011, both dates being approximate and inclusive,
within the Eastern District of New York and elsewhere, the
defendant NICHOLAS SANTORA, also known as "Nicky Mouth" and
"Nicky Cigars," together with others, did knowingly and
intentionally conspire to distribute and possess with intent to
distribute a controlled substance, which offense involved a
substance containing marijuana, a Schedule I controlled
substance, contrary to Title 21, United States Code, Section
841(a)(1).

     (Title 21, United States Code, Sections 846 and
841(b)(1)(D); Title 18, United States Code, Sections 3551 et
seq.)

17

<u>COUNT SEVEN</u>
(Illegal Gambling)

41.   The allegations contained in paragraphs 1 through 14 are realleged and incorporated as if fully set forth in this paragraph.

42.   On or about and between September 1, 2010 and January 20, 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant NICHOLAS SANTORA, also known as "Nicky Mouth" and "Nicky Cigars," together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving bookmaking, which operated in violation of the laws of New York State, to wit: New York Penal Law Sections 225.05 and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of 30 days and had a gross revenue of at least $2,000 in any single day.

(Title 18, United States Code, Sections 1955(a), 2 and 3551 <u>et</u> <u>seq</u>.)

<u>CRIMINAL FORFEITURE ALLEGATION AS TO COUNT ONE</u>

43.   The United States hereby gives notice to the defendant named in Count One that, upon his conviction of that offense, the government will seek forfeiture in accordance with

18

Title 18, United States Code, Section 1963, which requires any person convicted of such offenses to forfeit: (a) any interest acquired or maintained in violation of Title 18, United States Code, Section 1962; (b) any interest in, security of, claims against, or property or contractual right of any kind affording a source of influence over, any enterprise which the defendant established, operated, controlled, conducted or participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and (c) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of Title 18, United States Code, Section 1962.

44.   If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a)   cannot be located upon the exercise of due diligence;

(b)   has been transferred or sold to, or deposited with, a third party;

(c)   has been placed beyond the jurisdiction of the court;

(d)   has been substantially diminished in value; or

(e)   has been commingled with other property which cannot be divided without difficulty;

19

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property.

(Title 18, United States Code Sections 1963(a) and 1963(m))

<u>CRIMINAL FORFEITURE ALLEGATION AS TO
COUNTS TWO, THREE, FOUR, FIVE AND SEVEN</u>

45. The United States hereby gives notice to the defendants named in Counts Two, Three, Four, Five and Seven that, upon their conviction of any of those offenses, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property constituting or derived from proceeds traceable to such offenses. Upon the defendant SANTORA's conviction of Counts Four and Seven, the government additionally will seek forfeiture in accordance with Title 18, United States Code, Section 1955(d), which requires any person convicted of such offense to forfeit any property, including money, used in violation of Title 18, United States Code, Section 1955.

46. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)  cannot be located upon the exercise of due diligence;

(b)  has been transferred or sold to, or deposited with, a third party;

(c)  has been placed beyond the jurisdiction of the court;

(d)  has been substantially diminished in value; or

(e)  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property.

(Title 28, United States Code, Section 2461(c); Title 18, United States Code, Sections 981(a)(1)(C) and 1955(d); Title 21, United States Code, Section 853(p))

## CRIMINAL FORFEITURE ALLEGATION AS TO COUNT SIX

47.  The United States hereby gives notice to the defendant named in Count Six that, upon his conviction of that offense, the government will seek forfeiture in accordance with Title 21, United States Code, Section 853(a), which requires any person convicted of such offense to forfeit any property

21

constituting or derived from proceeds obtained, directly or indirectly, as a result of such offense, and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such offense.

48.   If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a)   cannot be located upon the exercise of due diligence;

(b)   has been transferred or sold to, or deposited with, a third party;

(c)   has been placed beyond the jurisdiction of the court;

(d)   has been substantially diminished in value; or

(e)   has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any

22

other property of such defendant up to the value of the

forfeitable property.

      (Title 21, United States Code, Sections 853(a) and

853(p))

                          A TRUE BILL

                    Deputy FOREPERSON

LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

BY: _____
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. 0.136

23

F. #2011R02050
FORM DBD-34
JUN. 85

No. 12-CR-050 (S-6) (CBA)

# UNITED STATES DISTRICT COURT

## EASTERN *District of* NEW YORK

### CRIMINAL DIVISION

## THE UNITED STATES OF AMERICA

*vs.*

*ANTHONY ROMANELLO and NICHOLAS SANTORA,*

Defendants.

# SUPERSEDING INDICTMENT (S-6)

( T. 18, U.S.C., §§ 894(a)(1), 981(a)(1)(C), 1951(a), 1955(a), 1955(d), 1962(d) 1963, 1963(a), 1963(m) 2 and 3551 et seq.)
T. 21, U.S.C. §§ 841(b)(1)(D), 846, 853(a), 853(p) and  T. 28, U.S.C. § 2461(c))

*A true bill.*

_____

Deputy Foreman

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

_____

*Clerk*

*Bail, $* _____

_____

***Jack Dennehy and Amir Toossi, Assistant U.S. Attorneys (718-254-6133, 6176)***