TM:JD/AHT
F.#2011R02050

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -                  12 CR 050 (S-6) (CBA)

ANTHONY ROMANELLO and
NICHOLAS SANTORA,

          Defendants.

- - - - - - - - - - - - - - - -X

MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT
ANTHONY ROMANELLO'S MOTION FOR SEVERANCE

LORETTA E. LYNCH
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Jack Dennehy
Amir H. Toossi
Assistant United States Attorneys
    (Of Counsel)

TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    I.   The Defendants . . . . . . . . . . . . . . . . . . . .1

    II.  The Nature of the Instant Charges . . . . . . . . . .2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    I.   There is No Basis for Severance . . . . . . . . . 10

        A.   The Defendants Are Properly Joined
            Under Rule 8 . . . . . . . . . . . . . . . . . 10

            1.  Legal Standard . . . . . . . . . . . . 10

            2.  Analysis . . . . . . . . . . . . . . . 11

        B.   The Defendant Has Not Established Any
            Prejudice to Warrant Severance Under
            Rule 14 . . . . . . . . . . . . . . . . . . . 12

            1.  Legal Standard . . . . . . . . . . . . 12

            2.  The Charges Filed and the Government's
               Evidence Against the Defendants Are Not
               Sufficiently Disproportionate to Merit
               Severance . . . . . . . . . . . . . . . 14

            3.  Judicial Economy and the Interests of
               Justice Require a Joint Trial Here . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . 23

i

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in opposition to defendant Anthony Romanello's motion for severance and a separate trial ("Def. Mem."). The defendant principally claims that the counts in which Romanello is charged in the Sixth Superseding Indictment (the "Superseding Indictment") should be severed from the counts of his co-defendant and that he should be given a separate trial. For the foregoing reasons, the defendant's motion is without merit and should be denied in its entirety.

BACKGROUND

I.   The Defendants

Evidence at trial will establish that Nicholas Santora is a longtime member and associate of the Bonanno organized crime family of La Cosa Nostra (the "Bonanno crime family"), who rose steadily through its ranks to become a member of its ruling administration. A cooperating witness (CW #1), is expected to testify at trial that he proposed Santora for induction into the Bonanno crime family and subsequently presided over Santora's induction ceremony in approximately 1995 or 1996. CW #1 will testify that Santora was subsequently promoted to captain and then again to acting underboss following the arrest of Michael Mancuso in approximately 2006, and that he understood Santora to be heavily involved in bookmaking and loansharking. Two additional cooperating witnesses, CW #2 and CW #3, are each

expected to testify at trial that they knew Santora to be an inducted member and captain of the Bonanno crime family.

Evidence at trial will establish that defendant Anthony Romanello, also known as "Rom," is an inducted member and acting captain of the Genovese crime family, a violent criminal enterprise that engages in a litany of crimes, including murder and assault, and crimes intended to obstruct justice. In connection with his membership in and association with the Genovese crime family, a grand jury sitting in this District previously returned a Superseding Indictment in <u>United States v. Romanello</u>, 10 CR 929 (S-1)(ILG), charging Romanello with participating in a racketeering conspiracy between January 1990 and July 2006, including illegal gambling, larceny by extortion and extortionate collection as predicate racketeering acts.[1]

II.  <u>The Nature of the Instant Charges</u>

By way of background, this case arises out of the government's investigation of a litany of crimes committed in Brooklyn, Queens and Staten Island, New York, by various members and associates of organized crime. The Superseding Indictment charges Nicholas Santora with racketeering conspiracy between

---

[1]     On January 10, 2012, Romanello entered a plea of guilty to RICO conspiracy, including predicate acts of extortion and illegal gambling. Romanello admitted, under oath, to his participation in the affairs of the charged enterprise, the Genovese crime family, between January 1990 and July 2006. (See Transcript of Plea, at pp. 22-28, attached as Exhibit 'A').

June 1, 2005 and November 21, 2011, including multiple predicate acts of extortion, extortion conspiracy and illegal gambling. The charges relate to Santora's participation in the affairs of the Bonanno crime family of La Cosa Nostra, and, in addition, his criminal activities and associations with La Cosa Nostra's other crime families, specifically the Genovese, Colombo, Gambino and Lucchese crime families in New York City.

The Superseding Indictment also charges Santora and Anthony Romanello with substantive counts (Counts Two and Three) of extortion and extortion conspiracy.  More particularly, Romanello is charged, along with Santora, with extortion and extortion conspiracy related to John Doe #1 and John Doe #2 (CW #3[2]), between approximately November 1, 2006 and May 30, 2008. The evidence of this crime will come primarily from the expected testimony of CW #3, consensual recordings made by him, the testimony of the federal case agents who supervised the investigation, and a witness regarding the rules, structure, hierarchy and protocols of La Cosa Nostra, particularly with respect to the Bonanno and Genovese crime families, and the relationship that exists between members and associates of the five families of La Cosa Nostra.

---

[2]     CW #3 is a longtime associate of the Bonanno crime family who pled guilty, pursuant to a cooperation agreement, to murder in-aid-of racketeering and other charges.  He is cooperating with the government in the hopes of obtaining leniency at sentencing and possible entry into the Witness Security Program.

3

With regard to these counts, in which Romanello and Santora are jointly charged, the evidence against each is overwhelming.  The evidence at trial, as discussed further below, is expected to establish conclusively the involvement of both Romanello and Santora in the extortion and extortion conspiracy charged in Racketeering Act One and Counts Two and Three.

  1. <u>Testimony of Cooperating Witness</u>

Beginning in 2006, CW #3 began cooperating with law enforcement.  At that time, CW #3 was on record with Vito Badamo, a Bonanno family soldier assigned to Santora's crew.  CW #3 is a mortgage broker, who had previously referred mortgages to Rocky Napoli, a partner at First Capital Mortgage in Mineola, New York, and an associate of the Genovese crime family.  After loaning CW #3 $30,000, a loan which CW #3 did not intend to pay back because he felt that Napoli owed him money for a loan referral, Napoli demanded repayment of the $30,000.  When CW #3 refused, Napoli sought to collect the money through Romanello, a captain in the Genovese crime family.  In response, CW #3 sought Santora for representation at a "sit-down" with Romanello.  CW #3 was ultimately told that he had to pay $15,000 to Romanello. At trial, CW #3 is expected to testify, in substance, as follows:

- In January 2005, CW #3 was processing a loan, the closing of which would yield a closing commission for Napoli (the "January 2005 loan").  However, before the January 2005 loan was closed, CW #3 was arrested and incarcerated.  The loan was eventually closed by John Doe #1, a business

4

associate of Napoli's, who thereafter received a commission for processing the loan.

- During the summer of 2006, after CW #3 was released from jail, CW #3 told Napoli that he was having financial problems and Napoli offered CW #3 $30,000.

- When Napoli demanded repayment of the $30,000, CW #3 explained that he had lost the commission related to the January 2005 loan to John Doe #1 even though CW #3 had referred the January 2005 loan to Napoli.

- After Napoli demanded that CW #3 return the $30,000, CW #3 went to Bonanno family soldier Vito Badamo to intervene on his behalf. Because Napoli was on record with the Genovese family, in order to resolve the dispute, Badamo arranged a "sit-down" with Anthony Romanello, a Genovese family captain. However, because Badamo was merely a soldier and Romanello was a captain, Badamo arranged for Santora to represent CW #3 at the sit-down. As a result of this sit-down and other meetings, it was decided that CW #3 and John Doe #1 would each be responsible for paying $15,000 to Romanello.

- In May 2007, Badamo told CW #3 that he had worked out a payment schedule with Romanello under which CW #3 would pay $200 per week towards the $15,000. It was CW #3's understanding that, if he did not pay this money as scheduled to Romanello, Romanello would have CW #3 physically harmed.

2. Consensual Recordings

Beginning in January 2006, CW #3 recorded his interactions with Vito Badamo, Santora and others at the direction of law enforcement. Specifically, on January 11, 2007, CW #3 recorded the above-described "sit-down" between Santora and Romanello. On January 11, 2007, CW #3 consensually recorded a conversation with Badamo as they were driving to the sit-down

5

with Napoli and Romanello.  Later, Badamo and CW #3 picked up
Santora and drove him to the sit-down.  CW #3 consensually
recorded the sit-down, which was attended by Badamo, Santora,
Romanello and Napoli.  During the sit-down, Romanello stated that
Napoli felt he was owed $30,000.  Santora responded that Napoli
should not have to pay a commission twice, but that if CW #3
could prove that the loan came from him, he should be paid.
Santora stated that if Napoli had already paid a commission, then
CW #3 should get his money from the person that received the
commission.  CW #3 stated that he believed John Doe #1 received
the commission.  Romanello asked Santora how he thought the
conflict between Napoli and CW #3 should be resolved, and Santora
responded that they needed to speak to John Doe #1 to explain
what happened with the commission.  CW #3 called John Doe #1 and
asked him to come to the sit-down.  Badamo stated that Napoli had
split the commission with John Doe #1 while CW #3 was
incarcerated.  John Doe #1 arrived at the sit-down and claimed
that the money he received was for the closing fees.  CW #3 and
John Doe #1 argued about whether this was correct.  CW #3 stated
that Napoli and John Doe #1 told him that there was no money in
the deal and that that was a lie.  Santora stated that he thought
the problem could be resolved.  Santora further stated that John
Doe #1 was entitled to a share of the money.  Romanello and
Santora decided to get back together the next Thursday to try and

6

resolve the problem.  Santora advised CW #3 to be flexible.
After the sit-down, Santora told Badamo that "all these guys are
around you (Badamo)" and that Badamo needed to tell them "what is
right."  Santora stated that CW #3 must collect the money from
John Doe #1 because Napoli was paying John Doe #1.

        After the "sit-down" on January 11, 2007, CW #3
continued to record conversations with Anthony Santoro and Vito
Badamo.  During those conversations, CW #3 continued to discuss
the dispute with Rocky Napoli with Badamo, and, on March 26,
2007, Badamo informed CW #3 that CW #3 would have to pay "12 or
15."  Later, on April 25, 2007, Badamo told CW #3 that John Doe
#1 would pay the rest of the money owed to Napoli but that Napoli
"has to get paid first."

        Subsequent recorded conversations demonstrated that CW
#3 and John Doe #1 were being extorted by Badamo and Santora and
that proceeds of the extortion were delivered to Romanello.  For
example, on April 27, 2007, Badamo told CW #3 that "there's no
way around" paying Romanello.  Badamo stated that "we" (referring
to the Bonanno family) did something to "them" (referring to the
Genovese family) that had nothing to do with Badamo or Romanello,
but that CW #3 and John Doe #1's money was being used to
compensate the Genovese family.  Badamo told CW #3 and Anthony
Santoro, an associate in the Bonnano family, to go and see John
Doe #1 and tell him that he was "on the hook for 15" and that he

would have to make payments every week.  Badamo stated that if
the payments were not made, Badamo would be "thrown to the
wolves."  Santoro and CW #3 then went to speak to John Doe #1.
On the way to see John Doe #1, Santoro told CW #3 that he did not
want to argue with anybody over the money and would rather "cut
their eye out" than argue with them.  However, when CW #3 and
Santoro met with John Doe #1, John Doe #1 claimed that he had an
agreement with Badamo whereby he no longer owed any money.
Santoro and CW #3 returned to Badamo and told him what John Doe
#1 had said.  Badamo stated, "We got to get that money" and that
he would set up another meeting.  Badamo then told Santoro that
he needs "to give him (John Doe #1) a beating" and "next time we
see him (John Doe #1), we go to work on him and leave him in the
street."

        On May 16, 2007, CW #3 consensually recorded another
conversation with Badamo in which Badamo told CW #3 that John Doe
#1 would "take care of his end" but that CW #3 had to give
Romanello a "schedule of payments" and would have to pay $200 per
week.  With respect to John Doe #1, Badamo stated he would spend
six months in the hospital if Badamo sent Santoro and that John
Doe #1 "needs to be put in his place."

        In subsequent recorded conversations with Badamo,
Badamo collected money from CW #3 on behalf of Romanello and
admonished CW #3 when he fell behind in his payments to

                              8

Romanello.  For example, on September 10, 2007, CW #3 delivered $1,400 to Badamo; on another occasion CW #3 delivered $5,000 to Badamo for payment towards the debt to Romanello.  Several weeks later, Badamo confirmed that the money had been delivered to Romanello and that Romanello was thankful that the money was delivered to him despite his home confinement.

CW #3 is expected to testify that these recordings demonstrate that Napoli, as an associate of the Genovese family, sought, and ultimately achieved, a "sit-down" over a debt with members of the Bonanno family.  This evidence shows the relationship between Romanello and Santora, and those two crime families, which would be properly admitted as evidence of association, knowledge and common scheme or plan at either defendant's trial.

These recordings, together with the expected testimony of CW #3, make clear that Romanello, over a period of many months, conspired with other members and associates of organized crime (including individuals from the Bonanno crime family) to engage in the very same violent crime charged against his co-defendant, Santora.  Thus, he should be tried together with his co-defendant as charged in the Superseding Indictment.

9

<u>ARGUMENT</u>

I.   <u>There Is No Basis for Severance</u>

Romanello argues that the counts in which he is named should be severed from the counts naming his co-defendant.  For the following reasons, the defendants in this case are properly joined under Rule 8 of the Federal Rules of Criminal Procedure. In addition, severance is not warranted under <u>Zafiro v. United States</u>, 506 U.S. 534 (1993).  Accordingly, the defendant's motion for severance should be denied.

A.   <u>The Defendants Are Properly Joined Under Rule 8</u>

1.   <u>Legal Standard</u>

Federal Rule of Criminal Procedure 8(b) provides for joinder of defendants charged in the same offense as follows:

> The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately.  All defendants need not be charged in each count.

The case law makes clear that joinder of two or more defendants is governed by Rule 8(b).  <u>United States v. Attanasio</u>, 870 F.2d 809, 814 (2d Cir. 1989); <u>United States v. Turoff</u>, 853 F.2d 1037, 1043 (2d Cir. 1988).

In determining the appropriateness of joinder under Rule 8(b), the Second Circuit has held that "multiple defendants may be charged with and tried for multiple offenses only if the

10

offenses are related pursuant to the test set forth in Rule 8(b), that is, only if the charged acts are part of a 'series of acts or transactions constituting . . . offenses.'" <u>Turoff</u>, 853 F.2d at 1043 (quoting Fed. R. Crim. P. 8(b)). As the Second Circuit has explained, this means "that the acts must be unified by some substantial identity of facts or participants" or "arise out of a common plan or scheme.'" <u>Attanasio</u>, 870 F.2d at 815 (internal quotation marks omitted). <u>See also</u> <u>United States v. Cervone</u>, 907 F.2d 332, 341 (2d Cir. 1990) (reaffirming disjunctive test set forth in <u>Attanasio</u>; upholding the joinder of a defendant who was charged with labor bribery and false statements in a wide-ranging 102-count indictment charging the remaining defendants with racketeering and myriad racketeering-related charges).

    2.  <u>Analysis</u>

      As discussed above, the charges against Romanello in this case arise out of a common scheme by Bonanno and Genovese crime family members and associates to earn monies through illegal activities, including illegal gambling, extortions, loansharking and collection of unlawful debts. In an effort to protect and promote those schemes, Santora and his co-defendant Romanello jointly engaged in a scheme to earn money, consistent with the mafia's primary purpose. Thus, the evidence of the rules, structure, hierarchy and protocols of organized crime family members and associates, particularly with respect to the

11

illegal activities discussed above, is central to the government's proof against both defendants.

The government anticipates that such evidence may be extensive, and will include cooperating witness ("CW") testimony, notably the testimony of CW #3 as to nearly every consensual recording and law enforcement witness testimony regarding the investigation of Racketeering Act One and Counts Two and Three. Indeed, the testimony of CW #3, the case agent and an expert on La Cosa Nostra would need to be duplicated if Romanello were tried separately from his co-defendant.  Because Santora and Romanello are charged with the same underlying conduct, the charges are, <u>ipso</u> <u>facto</u>, "unified by some substantial identity of facts or participants," <u>Attanasio</u>, 870 F.2d at 815 (internal quotation marks omitted), and "arise out of a common plan or scheme," <u>id.</u>  There is thus no misjoinder.

B. The Defendant Has Not Established Any Prejudice
   to Warrant Severance Under Rule 14

1. Legal Standard

There is a preference in the federal system that defendants indicted together be tried together.  <u>United States v. Miller</u>, 116 F.3d 641, 679 (2d Cir. 1997).  Federal Rule of Criminal Procedure 14 allows severance only upon a showing of "prejudice" to the defendant from a joint trial of charges or defendants.  Rule 14 provides, in relevant part:

12

> If the joinder of offenses or defendants in
> an indictment . . . appears to prejudice a
> defendant or the government, the court may
> order separate trials of counts, sever the
> defendants' trials, or provide any other
> relief that justice requires.

Under Rule 14, severance is only warranted in the narrow set of circumstances set forth in Zafiro, which held that a severance should only be granted where a joint trial would "compromise a specific trial right" of a defendant or "prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539. Accordingly, "[a] defendant seeking a Rule 14 severance bears the heavy burden of showing that he will be substantially prejudiced by a joint trial." United States v. Albunio, 1992 WL 281037, at *3 (E.D.N.Y. Sept. 9, 1992). "Substantial prejudice" is "prejudice so egregious that a defendant's rights cannot be adequately protected by admonitory instructions to a jury and the denial of a severance would deprive him of a fair trial." Id. The decision to grant severance is committed to the discretion of the trial court. See Zafiro, 506 U.S. at 541.

Judicial economy and the interests of justice compel a joint trial. See United States v. Jimenez, 824 F. Supp. 351, 366 (S.D.N.Y. 1993) (observing that "[j]udicial economy is the primary factor to be considered by the district court in the exercise" of its discretion over severance). These policies acknowledge an inevitable tolerance of some prejudice to

13

co-defendants, which is deemed outweighed by the avoidance of
duplicate trials.  See id. ("The risks of prejudice attendant in
a joint trial are presumptively outweighed by the conservation of
time, money, and scarce judicial resources that a joint trial
permits.").  Risk of inconsistent verdicts resulting from
separate trials, as well as the advantageous position that
subsequently tried defendants obtain from familiarity with the
prosecution's strategy is averted through single multi-defendant
trials.  See Richardson v. Marsh, 481 U.S. 200, 209-10 (1987).
Joint trials also "limit inconveniences to witnesses, avoid
delays in bringing defendants to trial and permit the entire
story to be presented to a single jury."  United States v.
Rucker, 32 F. Supp. 2d 545, 547 (E.D.N.Y. 1999).

> 2.  The Charges Filed and the Government's Evidence
>     Against the Defendants Are Not Sufficiently
>     Disproportionate to Merit Severance

Romanello has not established that he would suffer
prejudice of a kind sufficient to warrant severance under Rule
14.  Romanello makes the bald assertion that "because mafia RICO
prosecutions always involve the introduction of extensive
enterprise evidence, it is clear that defendant Romanello will be
prejudiced by the government's introduction of evidence seeking
to establish that the Bonanno crime family is an enterprise and
that Santora is a capo in that family."  (Def. Mem. at 3).

14

However, Romanello ignores the longstanding authority in the Second Circuit that jurors are presumed to be able to follow appropriate limiting instructions regarding separate charges as applied to individual defendants.  Thus, Romanello has utterly failed to explain specifically how the evidence would cause sufficient prejudice so as to require the remedy of severance.

First, Romanello is charged with two crimes of violence relating to the extortion of John Doe #1 and John Doe #2 between November 1, 2006 and May 30, 2008, in connection with efforts to collect a debt.  The crime was committed by respective capos of the Genovese and Bonanno crime families: Romanello and his co-defendant, Santora.  Thus, the crimes with which Romanello is charged, and the evidence in support of those crimes, is no less serious or prejudicial than the crimes with which his co-defendant is charged.  Additionally, Romanello's claim that he could be prejudiced by a joint trial in which he is charged with substantive counts as opposed to RICO counts is misguided.  As discussed above, the government will seek to admit evidence against Romanello and his co-defendant -- whether they are tried separately or together in a joint trial -- regarding the Bonanno and Genovese crime families' illegal ventures, which often overlapped and were committed with the knowledge and participation of the membership of the two families.  Thus, any risk of "prejudice" that Romanello claims will result from a

15

joint trial will not be lessened if he is tried separately from his co-defendant.

In addition, in extortion cases, there is substantial authority that permits the government to introduce evidence regarding a defendant's reputation for being a member of the mafia, in addition to evidence of a defendant's actual association with an organized crime family.  Such evidence is highly relevant here, as to both Romanello's state of mind and whether he intended for the victims of the extortion and extortion conspiracy charged in Counts Two and Three to be placed in fear.

"Extortion" for the purposes of Title 18, United States Code, Sections 892 and 894, "includes any act or statement which constitutes a threat if it instills fear in the person to whom [the threat is] directed or [is] reasonably calculated to do so in light of the surrounding circumstances." United States v. Pacione, 738 F.2d 567, 572 (2d Cir. 1984) (quoting United States v. Sears, 544 F.2d 585, 587 (2d Cir. 1976)) (modification omitted); see also United States v. Natale, 526 F.2d 1160, 1168 (2d Cir. 1975); United States v. Curcio, 310 F. Supp. 351, 357 (D. Conn. 1970); 18 U.S.C. § 891(7).  As the Second Circuit has observed, the rationale behind this broad definition of extortion under Sections 892 and 894 is best understood against the backdrop of Congress's efforts to combat organized crime.

16

<u>Pacione</u>, 738 F.2d at 570.  Due to the nature of La Cosa Nostra families, "loan sharks connected with organized crime rarely used force, or even made explicit threats to do so, because they found it unnecessary.  A loan shark's victim knew all too well that if he did not pay, a likely result would be bodily harm to him or his family."  <u>Id.</u>

Accordingly, to evaluate whether conduct comprises an extortionate threat, all of the surrounding circumstances must be considered.  Significantly, "it is the conduct of the defendant, not the victim's individual state of mind, to which the thrust of the statute is directed."  <u>Natale</u>, 526 F.2d at 1168; <u>see also</u> <u>United States v. Polizzi</u>, 801 F.2d 1543, 1548 (9th Cir. 1986) (observing that it is the defendant's actions, "not the mental state produced in the debtor" that is the focus for the jury).

Important to the instant analysis, evidence of a defendant's reputation "may be used to show the state of mind of both the defendant and the victim."  <u>United States v. Dennis</u>, 625 F.2d 782, 800 (8th Cir. 1980) (emphasis added).  As the <u>Dennis</u> court explained,

> If a man makes vaguely menacing statements, aware that he is commonly known as a violent man, then it is a reasonable inference that he intends to instill fear. . . .  It is unlikely that the defendant is unaware of his own reputation for violence; reputation, by definition, reflects general knowledge in the community, and, if anyone is a member of the relevant community, it is the defendant himself.

17

Id. at 800 (quoting Goldstock & Coenen, Controlling the Contemporary Loanshark: The Law of Illicit Lending and the Problem of Witness Fear, 65 Cornell L. Rev. 127, 200-01 (1980)); see also Pacione, 738 F.2d at 572 (citing Dennis and Goldstock & Coenen).  Similarly, in the context of an extortion under the Hobbs Act, the Second Circuit has held that where one of the elements that the government must prove is the instillation of fear, bad reputation evidence may be admitted as "such a reputation frequently conveys a tacit threat of violence." United States v. Mulder, 273 F.3d 91 (2d Cir. 2001) (quoting United States v. Tropiano, 418 F.2d 1069, 1081 (2d Cir. 1969)). The reasoning of Dennis, Mulder and Tropiano applies with equal force here.

In this case, the government seeks to admit evidence that Romanello's reputation in the community is that he is a powerful member of organized crime.  In addition, the government plans to offer evidence of his actual, ongoing association with members of the Genovese crime family.  This evidence is directly relevant to the charged extortion and extortion conspiracy as it demonstrates an implied threat of violence in the defendant's January 11, 2007 statements to John Doe #1 and John Doe #2 at the "sitdown" described above.  Further, the evidence of Romanello's association with the Genovese family strongly reveals Romanello's state of mind.  Indeed, Romanello's January 11th statements and

18

subsequent conduct, coupled with his reputation in the community as a member of the Genovese family and evidence of his actual association with gangsters, make clear that the defendant intended to instill fear in John Doe #1 and John Doe #2.

Thus, in light of all of the surrounding circumstances, i.e., Romanello's reputation and actual relationship with members and associates of the Genovese family, a reasonable debtor in the John Does' position would undoubtedly have been placed in fear by Romanello's conduct both during, and after, the January 11th "sitdown." Accordingly, the evidence of Romanello's relationship to organized crime constitutes important evidence to show the state of mind of both the defendant and his intended victims. See Dennis, 625 F.2d at 800; Pacione, 738 F.2d at 572.

Second, the fact that the government will admit evidence at trial that does not apply to all defendants can be easily remedied by appropriate limiting instructions to the jury, and by directing jurors to consider the evidence as to each count of the indictment and as to each defendant separately. See Zafiro, 506 U.S. at 539 (in those instances when a defendant does establish a risk of prejudice, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice"). Jurors are presumed to follow such instructions. See United States v. Teitler, 802 F.2d 606, 617 (2d Cir. 1986)

19

(stating that there is a presumption that jurors can and will follow instructions to consider certain evidence separately).

Even assuming _arguendo_ that Romanello's association with the Genovese (not Bonanno) crime family is somehow less "prejudicial," severance is not required because "differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials." United States v. Scarpa, 913 F.2d 993, 1015 (2d Cir. 1990) (internal quotation marks omitted); see also United States v. Riggas, 281 F. Supp. 2d 660, 674 (S.D.N.Y. 2003).

To the extent there is any risk of spillover prejudice arising from the differing levels of culpability and proof in a joint trial, it is insufficient to warrant severance. See United States v. Chang An-Lo, 851 F.2d 547, 557 (2d Cir. 1988); see also United States v. Hernandez, 85 F.3d 1023, 1029-30 (2d Cir. 1996) (the mere introduction against some defendants of evidence of violence and other crimes not committed by the other defendants is not sufficiently prejudicial to warrant severance). Where differing levels of culpability create the danger of spillover prejudice, the appropriate remedy is for the Court to provide the jury with a cautionary instruction that each defendant must be considered separately and that the proof against each defendant must be weighed individually. See Zafiro, 506 U.S. at 540-41;

20

<u>United States v. DeVillio</u>, 983 F.2d 1185, 1192-93 (2d Cir. 1993) (rejecting the argument by the defendants, who were charged in one burglary count, that the racketeering conspiracy and attempted murder charges against his co-defendants created spillover prejudice, citing the court's "explicit limiting instruction to the jurors that . . . testimony [concerning violence] could not be used against" the defendants).  When such instructions are given, it must be assumed that juries follow them.  <u>See</u> <u>Richardson v. Marsh</u>, 481 U.S. 200, 211 (1987); <u>United States v. Bin Laden</u>, 109 F. Supp. 2d 211, 219 (S.D.N.Y. 2000) ("Federal courts, quite routinely, have found juries able to follow and abide by appropriate cautionary instructions.").  Therefore, Romanello's arguments regarding the alleged risk of prejudice should be rejected.

　　　　Lastly, Romanello is not entitled to severance based upon Santora's right to a speedy trial.  It is well settled that one speedy trial clock applies to all defendants in a properly joined case.  <u>See</u>, <u>e.g.</u>, <u>United States v. Pena</u>, 793 F.2d 486, 489 (2d Cir. 1986); <u>United States v. Piteo</u>, 726 F.2d 50, 52 (2d Cir. 1983).

　　　　　　　3.　　Judicial Economy and the Interests
　　　　　　　　　　<u>of Justice Require a Joint Trial Here</u>

　　　　Given the minimal risk of prejudice from a joint trial in this case, judicial economy and the interests of justice compel a joint trial.  Although the trial in this case is not

21

expected to last more than approximately one to two weeks, to try Romanello separately from his co-defendant would essentially require multiple trials with repetitive, and often identical, presentations of evidence.  To have two trials would place an unwarranted burden on court resources.  This could also promote an unfair advantage for a later-tried defendant.  In <u>United States v. Gambino</u>, 729 F. Supp. 954, 971 (S.D.N.Y. 1990), Judge Leisure observed that "[k]eeping the number of times that certain key witnesses must repeat their testimony will also reduce the relative advantage accruing to defendants who are tried at later dates and who can benefit from knowledge of the contents and weaknesses of a witness's testimony."

        Ultimately, Romanello has not satisfied his "heavy burden" of establishing either substantial prejudice or even sufficient prejudice to outweigh either judicial economy or the interests of justice that compel a joint trial.  <u>See</u> <u>Albunio</u>, 1992 WL 281037, at *3.  Moreover, Romanello has not established that "a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence" as required by <u>Zafiro</u>, 506 U.S. at 539.  <u>See</u> <u>also</u> <u>United States v. Ventura</u>, 724 F.2d 305, 312 (2d Cir. 1983) ("We have held repeatedly that, absent a showing of substantial prejudice, defendants who are jointly

indicted should be jointly tried."). Accordingly, Romanello's motion for severance should be denied.

<u>CONCLUSION</u>

For the reasons set forth above, the defendant's motion for severance and a separate trial should be denied.

Dated:     Brooklyn, New York
           June 1, 2012

                                        Respectfully submitted,

                                        LORETTA E. LYNCH
                                        United States Attorney
                                        Eastern District of New York
                                        271 Cadman Plaza East
                                        Brooklyn, New York 11201


Jack Dennehy
Amir H. Toossi
Assistant United States Attorneys
      (Of Counsel)