1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF NEW YORK
2

3    - - - - - - - - - - - -    X

4    UNITED STATES OF AMERICA,    :    12 CR 50

5                                 :

6
          -against-              :
7                                      United States Courthouse
                                       Brooklyn, New York
8    NICHOLAS SANTORA              :
     ANTHONY ROMANELLO
9
                                       May 1, 2012
10         Defendants.     :    11:30 o'clock a.m.

11   - - - - - - - - - - - -    X

12
                  TRANSCRIPT OF ARRAIGNMENT
13         BEFORE THE HONORABLE CAROL BAGLEY AMON
              UNITED STATES CHIEF JUDGE
14

15   APPEARANCES:

16

17
     For the Government:        LORETTA E. LYNCH
18                              United States Attorney
                                BY: JACK DENNEHY
19                                  AMIR TOOSSI
                                Assistant United States Attorneys
20                                  271 Cadman Plaza East
                                Brooklyn, New York
21

22   For the Defendants:       RICHARD REHBOCK, ESQ.
                               Attorney for N. Santora
23

24
                               MATHEW MARI, ESQ.
25                             Attorney for A. Romanello

Court Reporter:          Gene Rudolph
                         225 Cadman Plaza East
                         Brooklyn, New York
                         (718) 613-2538


Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.

                         *****

         THE CLERK:  United States against Romanello and

Santora.

         Please state your appearances for the record.

         MR. DENNEHY:  For the government, Jack Dennehy and

Amir Toossi.

         Good morning, Your Honor.

         THE COURT:  Good morning.

         MR. MARI:  For Anthony Romanello, Mathew Mari,

M A R I.

         Good morning, Your Honor.

         THE COURT:  Good morning.

         MR. REHBOCK:  For Nicholas Santora,

Richard A. Rehbock.

         Good morning, Your Honor.

         THE COURT:  Good morning.

         I understand that there has been a superceding

1 indictment, that Mr. Romanello was added and has already been
2 arraigned.  Is that correct?

3       MR. MARI:  Yes, that is correct, Your Honor.

4       THE COURT:  All right.  Mr. Santora has not been
5 arraigned on the superceding indictment, is that correct?

6       MR. REHBOCK:  That is correct, Your Honor.

7       THE COURT:  Mr. Rehbock, have you been over the
8 superceding indictment with your client?

9       MR. REHBOCK:  Yes.  I discussed it with him, yes.

10       THE COURT:  Does he waive a formal and public
11 reading?

12       MR. REHBOCK:  Yes, Your Honor.

13       THE COURT:  How does he plead?

14       MR. REHBOCK:  Not guilty.

15       THE COURT:  Okay.  We have a trial date and a jury
16 selection, Mr. Dennehy.

17       MR. DENNEHY:  Yes, Your Honor.

18       Your Honor, this case, as you well know, was set
19 down for trial.  Five of the six defendants in the original
20 indictment have entered pleas.  Mr. Santora indicated that he
21 did not wish to avail himself of a plea offer.

22       In focusing then on the evidence that the government
23 is in possession of as to Mr. Santora, there is
24 evidence -- a cooperating witness that had been working with
25 the FBI had made numerous recordings which are the subject of

1  the superseding indictment charges as to Mr. Santora and

2  Mr. Romanello.  Due to security concerns and logistics about

3  the efficacy of that cooperating witness remaining proactive,

4  decisions were made with the FBI and last week that

5  cooperating witness was relocated for his own security.  His

6  information was presented to a grand jury and this superseding

7  indictment was returned.

8          THE COURT:  This has new discovery then?

9          MR. DENNEHY:  It does, Your Honor.

10          This particular individual made in excess of 70

11  recordings during the course of his time cooperating with the

12  government.

13          THE COURT:  The reason we decided not to bring this

14  to the Court and the defendant's attention sooner was what?

15          MR. DENNEHY:  Mr. Santora indicated that he wished

16  not to avail himself of a plea and to go to trial.  That

17  person's information was looked into.  The decision was made

18  either to seek a protective order from the Court not to

19  disclose it and protect that informant's identity, or to pull

20  that informant from the street, relocate him and use his

21  information proactively.

22          THE COURT:  Would this information have to be turned

23  over?  I take it, would have had to have been turned over if

24  Mr. Santora was going to trial on Monday on the original

25  indictment, correct?

1     MR. DENNEHY:  Or in the alternative, if the Court

2  had signed a protective order based on the fact that the

3  witness was still being used proactively and that his safety

4  could be compromised were those materials disclosed.

5     THE COURT:  Shouldn't that protective order have

6  come sometime ago, Mr. Dennehy, at the beginning of this case?

7  Discovery was turned over earlier.

8     MR. DENNEHY:  That is correct.

9     When I was assigned to this case, Your Honor, and it

10  was decided that the only defendant still going to trial was

11  Mr. Santora, I investigated the evidence in the government's

12  possession regarding Mr. Santora and decided whether or not to

13  seek either a protective order or to use his information.

14  Consultation was had with the FBI and the decision to use his

15  information was made.

16     THE COURT:  My only point is --

17     MR. DENNEHY:  I understand the Court's point.

18     THE COURT:  -- that it's all one government and

19  presumably the other earlier Assistants should have known

20  about this.  This is because it creates scheduling issues --

21     MR. DENNEHY:  I certainly understand, Your Honor.

22     THE COURT:  -- and other issues.

23     MR. DENNEHY:  The fact of the matter --

24     THE COURT:  I understand from your letter this

25  morning that Mr. Romanello has also pled guilty in another

1  case before Judge Glasser?

2      MR. DENNEHY:  Yes, Your Honor.

3      I did file this letter on ECF.  I have handed up a

4  copy to the Court and also to defense counsel and I will

5  provide a copy to Judge Glasser's chambers as well.

6      Mr. Romanello in the case before Judge Glasser had

7  pleaded guilty to charges involving RICO conspiracy.  He is

8  due to be sentenced on May 18th before Judge Glasser.

9      THE COURT:  And a plea agreement?

10     MR. DENNEHY:  Via a plea agreement which in fact was

11 a 11(c)(1)(b) type plea agreement.

12     THE COURT:  It didn't cover this?

13     MR. DENNEHY:  No, Your Honor.

14     In that case I can state that there was a protective

15 order signed regarding this particular individual's

16 information in the Romanello case before Judge Glasser.

17     MR. MARI:  Judge, that matter will be disputed on

18 paper, motion will be made to dismiss these current charges

19 based upon the plea agreement in Judge Glasser's case.

20 Just -- if Your Honor wishes to hear from me now?  Shall I

21 wait?

22     THE COURT:  No.  I take it, you've -- that is a

23 motion you intend to make though.

24     MR. MARI:  Absolutely, Judge.  The first order of

25 business is to do that.

1          I can tell the Court that Mr. Dennehy was the lead

2   counsel in that case in front of Judge Glasser, which was

3   going on for a year and a half.  It was a very contentious

4   case.  On the eve of trial we agreed to a plea which would

5   expose Mr. Romanello to ten to 16 months in jail and that -- I

6   may say to the Court, those charges were charges that went

7   back to 1999 and we were about to go to trial on that.

8          The government continually was adding ancient

9   charges, nothing new, nothing recent, nothing within the last

10  five years, and we made an agreement and we thought that

11  everything was covered and that Mr. Romanello was finished and

12  we pled to the RICO conspiracy, the Genovese enterprise, to

13  cover -- it was an extortion case too there, and we may be

14  wrong and they may be right, but I spoke to Mr. McMahon

15  yesterday.  Mr. McMahon and I are on trial in front of Judge

16  Forest in the Southern District of New York at this very

17  moment and I just left here to appear today.  But that's the

18  first order of business.

19          Certainly, we need to get discovery on this case and

20  we need to make motions, including perhaps suppressing the

21  tapes.  Possibly we may make a motion to sever Mr. Romanello

22  from this case.  I think if that happens, everything will go

23  smoothly.

24          I can honestly say to you, we don't know what these

25  charges are about.  But if there is any kind of proof, if the

1   government could convince us that they have a substantial

2   case, our probable course of action after we make all our

3   motions, get some discovery and find out what this is about,

4   it's not out of the question for us to hope that we might get

5   this back before Judge Glasser and put everything together and

6   see what we could do to resolve this thing instead of facing

7   another trial.

8           We prepared for trial in Mr. Romanello's case for a

9   year and a half and I could tell Your Honor that more work

10  went in that case than any other case I've been in that has

11  not gone to trial.

12          We resolved it.  We resolved it amicably.  The

13  government was satisfied, Mr. Romanello was satisfied, Judge

14  Glasser was satisfied.  And now I don't mean to use this word

15  in a pejorative sense, we kind of have been broadsided by

16  this, another old case where the conduct alleges from 2008 and

17  we wonder after all we had been through in Mr. Romanello's

18  case in front of Judge Glasser why wasn't that brought up?

19  They brought up things that were so farfetched and so far away

20  from the original indictment that even Judge Glasser commented

21  on it.  He said that the new charges were a totally new

22  indictment that were being brought in to prove the enterprise.

23          I am hoping -- I don't know why this happened.  But

24  I am hoping that we can get together with the government and

25  resolve this.  But certainly we don't need to be brought into

1    a situation, which is a trial ready situation with regard to

2    the codefendant.

3        THE COURT:  Mr. Rehbock, we have a trial with the

4    selection of a jury on Monday and trial to follow the next

5    week.  What is your position?

6        MR. REHBOCK:  I am hesitant to involve Your Honor

7    with plea negotiations, but we have tried to resolve this.  I

8    don't want to get into the problem of timing is -- I suspect.

9    But with these new charges, I don't think that we can go to

10   trial next week or the 7th and the 14th, because they are

11   brand new charges.  I know nothing about them.  My client knew

12   nothing about them until this morning.

13       THE COURT:  There are 70 recordings, is that what

14   you said?

15       MR. DENNEHY:  That witness made in excess of 70

16   recordings.  They all be provided to the defense, Your Honor.

17   We have isolated the relevant recordings as to these charges.

18   Clearly, they are entitled to all of his recordings for

19   informational purposes, Giglio purposes.

20       THE COURT:  How did you think that Mr. Rehbock and

21   his client were going to be ready for jury selection on Monday

22   and trial a week from then in light of this?

23       MR. DENNEHY:  Your Honor, as I stated, this decision

24   was made last week to take this cooperating witness off the

25   street and move him for his security.  He has viable valid

1    information that was presented to a grand jury that returned

2    this indictment against both of these defendants.  The crime

3    is within the Statute of Limitations.  It's something that the

4    government would be derelict if it was not charged, if we had

5    the information in our possession.  It is not done for

6    scheduling or any other purpose.  It is a viable valid charge

7    returned by the grand jury.

8            THE COURT:  I know.  It is just that I have

9    problems, Mr. Dennehy, and this isn't the first time, with the

10   government beginning to focus at what one might call the

11   eleventh hour on a case.  It is disruptive.  It is not the

12   first time that the government does this.

13           MR. DENNEHY:  In this particular case, Your Honor,

14   this informant was proactively working with the FBI up until

15   last month.  It is not a case of looking under the rocks for

16   old evidence.  This was an active, proactive investigation

17   that decisions were made about when best to take it down and

18   to relocate him and that was done here.

19           THE COURT:  That doesn't explain why the government

20   didn't come for a protective order though, does it?

21           MR. DENNEHY:  No, it does not.

22           THE COURT:  Mr. Dennehy, what do you think that the

23   Court should do here?  You give me your idea of how we

24   proceed.

25           MR. DENNEHY:  We have sent these relevant

1  recordings, Your Honor, to a transcription service, to make

2  draft transcripts of them.  I am going to provide them all to

3  defense counsel this week.  I don't want speak for defense

4  counsel.  Mr. Mari has indicated an intention to possibly

5  resolve this case.  I don't know what Mr. Santora's position

6  is with a possible chance to resolve it for plea negotiations.

7  But I will provide this discovery to the defense

8  expeditiously.  We will focus it and narrow it down to the

9  extent we can for them but, obviously, as Mr. Rehbock states,

10 they are going to need to review it and digest it and

11 decide --

12          THE COURT:  When is it going to be available?

13          MR. DENNEHY:  The recordings are being copied as we

14 speak, Your Honor.  The relevant ones will be turned over

15 today.  The totality of them will be turned over this week or

16 made available at a duplication company and as soon as we have

17 transcripts of the relevant pieces of recordings that are

18 relevant to the crime in the superseding indictment, we will

19 turn those over as well.

20          MR. REHBOCK:  The only comment I have to make is

21 turned over to a development company for us to purchase.

22 Mr. Santora has no money whatsoever, Judge, none.  And he was

23 previously CJA.  I was brought in to the case.

24          THE COURT:  You are not CJA.

25          MR. REHBOCK:  No, no.  Mr. Hochbaum was.  I came

1  into --

2        THE COURT:  He retained a lawyer?

3        MR. REHBOCK:  Yes.  But I am going to state to Your

4  Honor, he has absolutely no money and that if the government

5  wants to make this available to us, I ask that you -- that you

6  enter an order that he may get them free of charge.  He has

7  qualified otherwise and, quite frankly, I have -- I am

8  reluctant to go on the record.  But I haven't been paid

9  anything, Judge.  That is not a bar to me actively pursuing

10  this case, like I would if it was otherwise.  I am just

11  talking about the financial situation of this man.  I would

12  never use it as an excuse of shirking my duties because I

13  didn't get paid.

14        I didn't want to bring out this whole thing, but it

15  is the whole thing about are we going to get hung up further

16  not receiving these copies from this company that does the

17  duplication because we have to pay them.  That will cause us a

18  further problem.

19        I ask that he be permitted these copies free of

20  charge.

21        THE COURT:  Who he is going to pay for them, the

22  government?  Are you asking the government to -- can you make

23  a copy of them and give them to the defendant under these

24  circumstances?

25        MR. DENNEHY:  Certainly, Your Honor.

GR    OCR    CM    CRR    CSR

1          As to these 15 or 18 of the relevant recordings, we

2     are coping those in-house, as I said, as we speak.  They will

3     be turned over today.  The bulk of them, which would

4     constitute the witness' otherwise Rule 16 and Giglio

5     materials, I will do what the Court directs.  As I say, it

6     will be the government I guess paying for it then.

7          THE COURT:  Why doesn't the government provide all

8     of it at this point in time at its expense, just because of

9     the delay that it has caused.  I would ask the government to

10    do that.

11         THE CLERK:  I'm sorry.  Is there a date by which --

12         THE COURT:  You said Friday, right?

13         MR. DENNEHY:  They will be available at the end of

14    the week, yes.

15         THE CLERK:  All of the recordings?

16         THE COURT:  All of the recordings?

17         MR. DENNEHY:  All of the recordings, yes.

18         THE COURT:  Mr. Mari, you have suggested that before

19    motions are due that you are going to discuss the matter with

20    the government.

21         Mr. Rehbock, are you still discussing a disposition

22    with the government on behalf of your client?

23         MR. REHBOCK:  Judge, I sent them --

24         THE COURT:  No.  I am just asking, are you going to

25    continue that?

1          MR. REHBOCK:  The answer is yes.

2          We were ready to move forward on that.

3          THE COURT:  Why don't we do this.  Why don't I put

4  this over for a status conference before we get into dealing

5  with motions and setting a trial date on the hopes that we

6  will have further discussions.

7          Does that make sense?

8          MR. MARI:  Yes.

9          MR. REHBOCK:  Yes, Your Honor.

10         MR. DENNEHY:  Yes.

11         THE COURT:  Mr. Dennehy?

12         MR. DENNEHY:  Yes.

13         THE COURT:  You agree with that?

14         MR. DENNEHY:  Yes.

15         THE COURT:  May we have a date about two weeks from

16  now?

17         MR. MARI:  Judge, we are on trial, Mr. McMahon and

18  I, and we get Fridays off.

19         THE COURT:  Okay.

20         MR. MARI:  I am anticipating we should be concluded

21  by the 14th, at the latest.  Mr. Romanello has to appear in

22  front of Judge Glasser at 11:00 am on the 18th.  Would it be

23  inappropriate to put this case on for that same day?

24         THE COURT:  If I have the time.

25         MR. REHBOCK:  If it's the afternoon, Judge.  I have

1   to be before Judge Wexler.  The one day I have on my calendar,

2   I have to be before Judge Wexler at 11:00 o'clock out in

3   Central Islip.

4            THE COURT:  We can put it on at 3:00 o'clock.

5            MR. MARI:  That would be fine.

6            THE COURT:  3:00 on the 18th.

7            MR. REHBOCK:  That should be enough time for me.

8            THE COURT:  I will exclude time on Mr. Romanello,

9   continue to exclude time for Mr. Santora, ongoing plea

10  negotiations.

11           MR. REHBOCK:  No objection whatsoever.

12           MR. MARI:  Consent, Your Honor, yes.

13           THE COURT:  Okay.

14           MR. REHBOCK:  I just -- we have three dates.

15           THE COURT:  You don't have to come -- the fourth is

16  off.  The jury selection is off.

17           You are not seeking to go forward?  You want the

18  time?

19           MR. REHBOCK:  Yes.

20           THE COURT:  Correct, Mr. Rehbock?

21           MR. REHBOCK:  Yes.  I just want, so the record

22  somehow finds its way clear, that we do not have to appear the

23  fourth, seventh or fourteenth.

24           THE COURT:  No.  From what I am gathering, you are

25  not insisting, you don't want to go to trial on --

1          MR. REHBOCK:  Not this.

2          THE COURT:  -- on the underlying charges?

3          MR. REHBOCK:  Not next week, yes, ma'am, that's for

4    sure.

5          THE COURT:  Okay.

6          MR. REHBOCK:  I'm sorry to belabor.  I just wanted

7    to make the record clear, that we don't have to appear.

8          THE COURT:  I understand that.  That's fine.

9          MR. MARI:  3:00 pm, May 18th.

10          THE COURT:  Yes.  I will see everyone then.

11          MR. MARI:  Thank you very much, Your Honor.

12          MR. REHBOCK:  Thank you, Your Honor.

13          (Matter concludes.)

14

15

16

17

18

19

20

21

22

23

24

25